## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALICE WIDDOWS, as Administrator of the ESTATE OF KEVIN F. WIDDOWS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  22-CV-200-NJR |
| JACKSON COUNTY, et al., | ) ) | |
| Defendants. | ) | |

**COUNTY DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 60 MOTION**

Defendants Jackson County, Sheriff Robert Burns, Lee Kersten, Bobby Smith, Weylin Wece, Michael Stratton, Kaitlyn Stearns, Frank Cano, Kyle Spradling, Nicholas Stearns, Sergio Rafael, Greg Rowald, Garrett Etherton, and Blake Bachmann, by and through their attorney, submit the following response to Plaintiff's amended Rule 60 motion to set aside the judgment.

Plaintiff's Rule 60 motion should be denied for the following reasons. First, Plaintiff has not shown with clear and convincing evidence that Ballard's failure to withdraw or notify the Court that he was not licensed in 2024 was the kind of misconduct that amounts to fraud on the court under Rule 60(d)(3). His misconduct was not the kind that Plaintiff could not have, with diligent inquiry, discovered before the Court entered judgment in this case. There is no evidence of any intent to defraud the court. And there are other remedies available to protect the courts from such conduct. Second, the judgment is not void under Rule 60(b)(4) because Plaintiff had constructive notice of the motion for summary judgment through her attorney, who was still licensed when the motion was filed. As to the show cause order, Plaintiff could have discovered it with diligent inquiry into the status of her case before entry of judgment. Finally, setting aside the judgment will be a "fruitless' gesture because Plaintiff cannot prevail on her claims in any event.

1



I.      **Plaintiff has not shown with clear and convincing evidence that Ballard's misconduct amounts to fraud on the court.**

The Seventh Circuit has emphasized that "Rule 60 relief is limited to extraordinary situations where a judgment is the inadvertent product of special circumstances and not merely the erroneous application of law." *Kennedy v. Schneider Electric*, 893 F.3d 414, 419 (7th Cir. 2018) (internal quotes omitted). The Seventh Circuit has further stressed that although "Rule 60 gives district courts the power and discretion to modify their judgments when truly new facts come to light or when the judge recognizes an error and believes it should be corrected . . . judges exercising that flexibility must be careful not to undermine too lightly the finality of their judgments." *Id*.

"Rule 60 recognizes two types of fraud in the adversarial process that, if demonstrated within the proper timeframe, may merit relief from a final judgment." *Kennedy*, 893 F.3d at 419. First, Rule 60(b)(3) allows a party to seek relief on the basis of "fraud [,] misrepresentation, or misconduct by an opposing party" that prevented the party seeking relief "from 'fully and fairly presenting'" his meritorious case at trial. *See Wickens v. Shell Oil Co*., 620 F.3d 747, 759 (7th Cir. 2010). Parties asserting this type of "fraud by the opposing party" must move for relief within one year of "the entry of the judgment or order or the date of the proceeding." *Kennedy*, 893 F.3d at 419. In this case, Plaintiff is not alleging fraud under Rule 60(b)(3).

Instead, Plaintiff in this case is alleging the second type of fraud - "fraud on the court," under Rule 60(d)(3), which the Seventh Circuit has described as fraud "directed to the judicial machinery itself" and involving "circumstances where the impartial functions of the court have been directly corrupted." *Id*.; *In re Golf 255, Inc*., 652 F.3d 806, 809 (7th Cir. 2011) (fraud on the court is "that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court (i.e., lawyers) so that the judicial machinery cannot perform in its usual manner its impartial task of adjudging cases."). Motions seeking relief for fraud on the

**EXHIBIT**

court can be brought at any time after judgment because the "conduct . . . might be thought to corrupt the judicial process itself[.]" *Id.* (quoting *Oxxford Clothes v. Expeditors Intern. of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997)).

Because a "motion to set aside a judgment on the ground of fraud on the court has no deadline," the Seventh Circuit has defined "fraud" under Rule 60(d)(3) "narrowly lest it become an open sesame to collateral attacks." *Kennedy*, 893 F.3d at 419-20 (quoting *In re Golf*, 652 F.3d at 809). Given the "high bar for what constitutes fraud on the court under Rule 60(d)(3)," the Seventh Circuit has stated that the alleged fraud must be "the kind of fraud that ordinarily could not be discovered, despite diligent inquiry, within one year or even many years." *Id.*

The standard for fraud on the court under Rule 60(d)(3) is thus higher and distinct from the more general standard of fraud under Rule 60(b)(3). *Id.* In other words, not all fraudulent acts amount to fraud on the court. *Fox ex rel. Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131, 135-36 (4th Cir. 2014) ("Fraud on the court is not your garden variety fraud."); *Alexander v. Robertson*, 882 F.2d 421, 425 (9th Cir. 1989) (the unauthorized practice of law is not "fraud on the court" because, among other reasons, there are other remedies available to protect the judicial system from this type of misconduct). A finding of fraud on the court under Rule 60(d)(3) is reserved for only "the most extraordinary and egregious circumstances." *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1080 (7th Cir. 2016). Moreover, fraud on the court involves "far more than an injury to a single litigant." *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, (1944) overturned on other grounds by *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976). Examples of fraud on the court are "bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial

**EXHIBIT**

proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured." *E.g.*, *In re Golf,* 652 F.3d at 809.

Finally, the party seeking to set aside a judgment under Rule 60 must prove fraud by clear and convincing evidence." *Wickens*, 620 F.3d at 759. Fraud on the court requires proof of "intent to deceive or defraud the court" through a "deliberate scheme." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002); *Hazel-Atlas*, 322 U.S. 238 (finding fraud on the court by an attorney in a "deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals."); *United States v. Sierra Pac. Indus., Inc*., 862 F.3d 1157, 1168 (9th Cir. 2017) (fraud on the court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision"); *Rozier v. Ford Motor Co*., 573 F.2d 1332, 1338 (5th Cir. 1978) (quoting *England v. Doyle*, 281 F.2d 304, 310 (9th Cir.1960) ("[I]t is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.")); *Fox ex rel. Fox v. Elk Run Coal Co., Inc*., 739 F.3d 131, 136 (4th Cir. 2014) ("not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individual parties generally does not."); *see also Banks v. U.S.*, 08-cv-63-JPG, 2013 WL 424788, *3 (S.D. Ill. Feb. 4, 2013) (Gilbert, J.) (quoting *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996) ("Intent to defraud is an absolute prerequisite to a finding of fraud on the court."). Thus, "conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud, much less to carry the burden of resolving that issue." *Di Vito v. Fidelity & Deposit Co*., 361 F.2d 936, 939 (7th Cir. 1966).



Here, Plaintiff has not met her burden of proving, with clear and convincing evidence, that Ballard's conduct amounted to fraud on the court for the following reasons.

First, Ballard's conduct does not constitute the kind of fraud that Plaintiff could not have discovered through diligent inquiry before judgment was entered. Plaintiff explained that from the time she retained Ballard until October 2024, she regularly communicated with Ballard's office concerning her probate case and this case; and she was told by Ballard's staff that he was handling the matters and she trusted his experience as an attorney. But the Jackson County Circuit Court docket sheet attached to Plaintiff's brief (Doc. 80-3) shows that Ballard made no filings or updates to the probate court from October 26, 2022 to March 13, 2024. He failed to appear in the probate court for status hearings in Plaintiff's probate matter on June 6, 2023 and September 5, 2023. The case was set for status on January 16, 2024 and January 31, 2024. The docket indicates that Ballard's office called the court on both those dates and notified them he was sick. Ballard appeared in probate court on March 13, 2024, but then did not appear at the status hearing on July 17, 2024. (Doc. 80-3 at p. #944) The docket sheet indicates that the probate court sent separate notices before and after each missed hearing to both Ballard and Plaintiff. So, regardless of what Ballard's staff was telling Plaintiff, she should have realized or at least suspected from reading the notices in 2023 that Ballard was neglecting her matter; and she should have realized by January 2024 that Ballard was citing his health problems as a reason for not appearing in court.

Importantly, Plaintiff failed to diligently inquire on the status of this case during a period of 10 days between July 22, 2024, when Ballard's receptionist told her he was closing his office and sending her case to another attorney, and August 2, 2024, when the Court granted Defendants' motions for summary judgment. Plaintiff states she called the new attorney, but he did not respond to her calls. But sending emails to an attorney and "making unreturned phone calls[] is no substitute



for action." *See Choice Hotels Intern., Inc. v. Grover*, 792 F.3d 753, 756 (7th Cir. 2015). Plaintiff "readily could have consulted the docket" in this Court. *Id.* (explaining that "civil litigants are responsible for their own choices and their own inaction. Litigants who know or strongly suspect that their own lawyers are asleep on the job must act to protect their own interests by hiring someone else.").

Having been on notice of Ballard's inaction in her probate case for almost a year and a half, Plaintiff should have checked this Court's docket as soon as she learned that Ballard's office was closing. If Plaintiff had checked the docket in this Court in the ten days before the Court entered judgment, she would have learned that Ballard had not filed any responses to Defendants' motions for summary judgment or the Court's show cause order. If Plaintiff had checked this Court's docket, she would have seen Defendants' October 3, 2023 filing, in which they informed the Court that Ballard had failed to make any discovery disclosures, do any written discovery, take any depositions, or disclose any experts in this case, and had not communicated with Defendants' counsel since January 2023. (Doc. # 55) Plaintiff could also have checked the ARDC website at that time, and would have learned that Ballard was not licensed to practice law. Plaintiff could have then notified the Court before it entered judgment. But Plaintiff did nothing until her son learned through an internet search a month later, on September 4, 2024, that this case had been dismissed.

In short, Plaintiff failed to exercise due diligence. Had she diligently inquired – if not in 2023 and early 2024, then at least in late July 2024 - she would have discovered Ballard's neglect, and allegedly fraudulent act of not notifying the Court that he was not licensed to practice law in 2024, before the Court entered judgment. Put differently, Ballard's neglect of Plaintiff's case and his allegedly fraudulent act of not notifying the Court of his licensing status were not the kind of



fraudulent acts that "could not have been discovered without diligent inquiry." *Kennedy*, 893 F.3d at 419-20. On the contrary, Ballard's neglect and alleged fraud were hiding in plain sight. All that Plaintiff needed to do to uncover Ballard's misconduct was to check public records online, i.e., this Court's docket and the ARDC website.

Second, Plaintiff has not shown that Ballard's failure to withdraw from the case or his failure to notify the Court after his license lapsed in 2024 was a deliberate scheme or plan designed to improperly influence the Court's decision on Defendants' motions for summary judgment. Plaintiff contends Ballard violated his duty of candor by failing to file a motion to withdraw or otherwise inform the Court that he was no longer legally authorized to represent Plaintiff. But, crucially, Plaintiff has not shown any clear and unambiguous evidence to allow the Court to conclude that - in failing to notify the Court that he was no longer licensed - Ballard acted with an intent to deceive or defraud the court.

The Jackson County Circuit Court docket sheet attached to Plaintiff's brief (Doc. 80-3) indicates there may be other reasons for Ballard's failure to withdraw or notify the Court that his license lapsed in 2024 – neglect or infirmity. The docket indicates that he did not appear in the probate court for status hearings in Plaintiff's probate matter on June 6, 2023 and September 5, 2023. The case was set for status on January 16, 2024 and January 31, 2024. The docket indicates that Ballard's office called the court on both those dates and notified them he was sick. (Doc. 80-3 at p. #944)

The docket sheet indicates that Ballard appeared for the next status hearing on March 13, 2024, but did not appear in that court after that date. Plaintiff contends that Ballard's appearance in state court in on March 13, 2024 shows he was affirmative engaged in the unlicensed practice of law during that time period. Even if Plaintiff can show that Ballard practiced without a license

**EXHIBIT**

in state court, that alone cannot constitute grounds for relief under Rule 60(d)(3) in this case. *See Potter v. Mosteller*, 199 F.R.D. 181 (D.S.C. 2000), aff'd, 238 F.3d 414 (4th Cir. 2000) (holding that alleged fraud by defendant upon the state-court judge about plaintiff's party status in a related state court action could not serve as the basis for relief from the judgment in the federal district court, because any fraud was not perpetrated upon the federal court). Moreover, even though Ballard appeared once in state court in 2024, he did not appear in any hearing or file anything in this Court in 2024. His conduct in this Court consists of inaction.

Without clear and convincing evidence that Ballard acted with an intent to deceive or defraud the Court, Plaintiff cannot meet her high burden of establishing fraud on the court. As the Tenth Circuit explained:

> "[F]raud on the court," whatever else it embodies, requires a showing that one has acted with an intent to deceive or defraud the court. A proper balance between the interests underlying finality on the one hand and allowing relief due to inequitable conduct on the other makes it essential that there be a showing of conscious wrongdoing—what can properly be characterized as a deliberate scheme to defraud—before relief from a final judgment is appropriate.... Thus, when there is no intent to deceive, the fact that misrepresentations were made to a court is not of itself a sufficient basis for setting aside a judgment under the guise of "fraud on the court."

*Buck*, 281 F.3d at 1342 (quotation and citation omitted).

In short, Plaintiff's "conclusory averments of the existence of fraud," without "clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud, much less to carry the burden of resolving that issue." *Di Vito* 361 F.2d at 939.

Third, Ballard's misconduct was not material to the Court's decision and judgment. Ballard's failure to notify the Court of his lapsed license was immaterial to the issues the Court had to decide in this case. Even though Ballard failed to respond to the show cause notice, the



Court reviewed the evidence in the record and independently found that summary judgment to the defendants was warranted, as explained more fully in III below.

Finally, Ballard's failure to withdraw or notify the Court that he was not licensed in 2024 does not constitute the 'most egregious' conduct involving 'a corruption of the judicial process itself' so that the value of vacating the judgment outweighs the general principle supporting finality of judgments. See *Alexander v. Robertson*, 882 F.2d 421 (9th Cir. 1989). In *Alexander*, the Ninth Circuit Court of Appeals held that the unauthorized practice of law did not amount to fraud on the court. *Id*. at 425. There, Alexander sued Robertson in the district court for failing to make required payments under a contract to purchase a boat. *Id*. at 421-422. Robertson in turn cross-claimed against Fraser, Inc., the broker who had arranged for the sale of the boat. *Id*. Following a trial, the district court sustained Alexander's claim against Robertson and rejected Robertson's cross-claims against Fraser. *Id*. at 422. However, Robertson later learned that Fraser's attorney had not been licensed to practice law in the State of California at the time of the trial. *Id*. Robertson then moved the district court to vacate the judgment, relying on Fraser's attorney's alleged fraud on the court. *Id*. The district court denied Robertson's motion. *Id*.

On appeal, the Ninth Circuit Court, reading *Hazel–Atlas*, 322 U.S. at 246, in conjunction with Moore's definition of fraud upon the court, observed that on first blush, Robertson's assertion that Fraser's attorney's misconduct had subverted the integrity of the judicial process seemed to fit with the proposition that relief may be granted for fraud upon the court where there is an extraordinary harm to the public. *Id*. at 424.

Nevertheless, the Ninth Circuit affirmed the district court's denial of Robertson's motion to vacate the judgment on the following grounds. First, there was no showing that Fraser's attorney's misconduct was "designed to improperly influence the court in its decision."  The court



explained that "the unlicensed practice of law, without more, does not necessarily "inhibit a court from adjudging cases impartially. *Id*. at 425.  The court also cited an older decision for the proposition that "the right of an attorney to appear for one of the parties is a collateral matter having nothing to do with the merits of the case between the parties." *Id*.

Second, the Ninth Circuit agreed with the district court "that setting aside the judgment on Robertson's Rule 60 motion was an inappropriate sanction under these circumstances because it will neither protect the integrity of the judicial system nor vindicate the interests of a party victimized by the unlicensed practice of law." *Id*. Setting aside the judgment would be a "fruitless" gesture, inasmuch as Robertson could not prevail on his cross-claims against Fraser in any event. *Id*. Moreover, "because none of the parties were aware of [Fraser's attorney's] misconduct, vacating the judgment would "punish" parties who are in no way responsible for the "fraud." *Id*.

Finally, the Ninth Circuit explained that other remedies, such as disciplinary proceedings and criminal proceedings, were available to protect the judicial system from the harm arising from Fraser's attorney's misconduct. *Id*.

Here, like the plaintiff in *Alexander*, Plaintiff has not shown that Ballard's failure to withdraw or notify the Court of his unlicensed status in 2024 was "designed to improperly influence the court in its decision." *Id*. In addition, setting aside the judgment in this case will be a similarly "fruitless" gesture because Plaintiff cannot prevail on her claims against Defendants, for reasons explained in III below. Instead, because Defendants in this case were unaware of Ballard's unlicensed status before judgment was entered, setting aside the judgment will only "punish" Defendants who are in no way responsible for the alleged fraud. Finally, there are other remedies available to protect the judicial system from the unauthorized practice of law.

10



In Illinois, the unauthorized practice of law is a civil and criminal offense. Under the Illinois Attorney Act, "any person practicing . . . or holding himself or herself out to provide legal services . . . either directly or indirectly, without being licensed to practice . . . is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State. The remedies include, but are not limited to: (i) appropriate equitable relief; (ii) a civil penalty not to exceed $5,000, which shall be paid to the Illinois Equal Justice Foundation; and (iii) actual damages." 705 ILCS 205/1.

The offender can also be charged with common law indirect criminal contempt, which is subject to incarceration. *See How the ARDC Tackles the Unauthorized Practice of Law*, https://www.illinoiscourts.gov/News/847/How-the-ARDC-tackles-the-Unauthorized-Practice-of-Law/news-detail/ (September 27, 2017) (last visited April 14, 2025).

In addition, under 720 ILCS 5/17-2(b)(1), "a person commits a false personation if he or she knowingly and falsely represents himself or herself to be . . . an attorney authorized to practice law for purposes of compensation or consideration," but this provision "does not apply to a person who unintentionally fails to pay attorney registration fees established by Supreme Court Rule." A violation of 720 ILCS 5/17-2(b)(1) is a Class 4 felony. See 720 ILCS 5/17-2(f).

Resorting to these civil and criminal proceedings "would operate adequately to convey the message to the public that the courts will not tolerate this type of misconduct." *Alexander*, 882 F.2d at 425.

Plaintiff has not cited any analogous Rule 60(d)(3) case involving the unauthorized practice of law to support her contention that Ballard's conduct constitutes fraud on the court. *In re Golf* involved the misconduct of an attorney who allegedly lied when he was acting in his capacity as a creditor in a bankruptcy proceeding. *Wickens* involved discovery violations arising out of non-

11



disclosure of evidence. In both those cases, the court found that the conduct did not amount to fraud on the court., In *Advanced Fluid Systems*, the attorney failed to disclose his attorney disciplinary history to his client and the court. Despite the attorney's lack of candor, however, the court found it did not amount to fraud on the court. *Wildcat* is distinguishable. There, the court found clear and convincing evidence of an intentional scheme to conceal information and deceive the court by the judgment debtors to create a shell company and transfer assets to fend off legitimate creditors. In this case, by contrast, Plaintiff has not shown that Ballard's inaction, i.e., failure to withdraw or notify the Court that he was not licensed in 2024, was a deliberate scheme to improperly influence or deceive the Court to obtain a favorable decision.

For these reasons, Plaintiff has not met her burden of showing with clear and convincing evidence, that Ballard's conduct amounted to fraud on the court under Rule 60(d)(3).

## II.    The judgment is not void because Plaintiff received constructive notice of the County Defendants' motion for summary judgment through Ballard.

Under Rule 60(b)(4), a party is entitled to relief from judgment if the judgment was void. "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Plaintiff challenges the judgment on due process grounds and contends she was unrepresented as of January 1, 2024, so she was entitled to notice as a pro se litigant before the Court ruled on the motion for summary judgment, but she was not provided any notice by Ballard of the motions for summary judgment or the Court's show cause order.

But, assuming Ballard was not licensed as of January 2024, Plaintiff ignores the fact that Ballard represented her until December 31, 2023. The County Defendants filed their motion for summary judgment on October 6, 2023 (Doc. 59) Ballard received notice of the filing through the



ECF system. Plaintiff does not, and cannot dispute, that Ballard was her attorney at that time and continued to represent her until December 31, 2023. As the Supreme Court has explained, "in our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962). So, Plaintiff is deemed to have had notice of the motions for summary judgment through her attorney, Ballard, about two months before his law license lapsed. If Ballard did not provide Plaintiff with notice of the motions, his failure to do so does not rise to the level of "exceptional" circumstances to warrant relief under Rule 60. *See Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc*., 570 F.3d 845, 848 (7th Cir. 2009). As the Seventh Circuit has emphasized, "The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client." *Id*. Thus, "[d]eception of a client becomes the liability of the client's attorney and not the client's opponent." *Id.*

As to Ballard's failure to provide Plaintiff notice the Court's April 4, 2024 show cause order, Plaintiff could have discovered this failure of Ballard if she had made diligent inquiry of the status of this case during the ten day period between July 22, 2024, when Ballard's receptionist told her he was closing his office and sending her case to another attorney, and August 2, 2024, when the Court granted Defendants' motions for summary judgment, as explained in I above.

### III.    Plaintiff was not prejudiced by Ballard's conduct because she cannot prevail on her claims against the County Defendants even if judgment is set aside.

Plaintiff contends that the judgment should be vacated because there are disputes of material fact, which she should be allowed to present because Ballard denied her that opportunity by failing to provide her notice of the motions for summary judgment.

13



**EXHIBIT**

Plaintiff's contention that there are disputes of material fact as to her claims against the County Defendants is belied by the record. Specifically, Plaintiff's contention that there is a material dispute about whether anyone at the jail forwarded Kevin's hospital records to Centerstone reflects an unfamiliarity with the record. Contrary to Plaintiff's contention, Centerstone was aware that Kevin was in the hospital before he was brought to the Jail because Centerstone counselors first assessed him at the Carbondale Police Department before he was taken to the hospital and then again while he was in hospital. See Doc. 60, Exhibit 17 (Centerstone records) (filed under seal). The Centerstone records indicate that the counselors were aware that Kevin had to be placed in a psychiatric facility, but there was a waitlist, so he was sent to the jail after he was medically cleared. The Centerstone counselor again assessed Kevin in the jail. As the Court noted, the counselor, Ms. Lazoya, evaluated him and did not find him to be a suicide risk. So, the issue of whether Centerstone had Kevin's hospital records is not material given that Centerstone had been tracking and assessing him before, during, and after his hospital stay. There is no evidence in the record to support Plaintiff's other arguments because Ballard did not do any discovery or take any depositions. Plaintiff is simply speculating, and speculation cannot defeat summary judgment.

As the Court explained in its summary judgment opinion, it properly reviewed the record and found that Plaintiff lacked evidence to show that any of the individual defendant officers had any notice that Kevin was a suicide risk because they had such infrequent or fleeting contact with Kevin. Plaintiff argues that the booking and intake procedures were deficient and one of the officers did not receive suicide training. But, as the Court pointed out, there is no evidence in the record to establish that the Jail had widespread practices of denial of mental health care, denial of access to safe and secure suicide prevention cells, and inadequate training and supervision. There

14



is no evidence of a pattern of prior suicides in similar circumstances to put the Sheriff on notice

that there were any deficiencies in policy or procedure. In her Rule 60 brief, Plaintiff focuses on

alleged missteps and deficiencies in the way Kevin was handled, but misses the point that

Plaintiff cannot prove a *Monell* claim by showing one or two missteps, what is needed is a series

of prior suicides in analogous circumstances.

      In the end, Plaintiff was not prejudiced by Ballard's failure to respond to the motions for

summary judgment or the show cause order, but rather because Ballard conducted no discovery

in this case whatsoever – no Rule 26(a)(1) disclosures, and no written or oral discovery. As a

result, there was insufficient evidence to support Plaintiff's claims or survive summary

judgment. Even if the Court sets aside the judgment, Plaintiff is not entitled to reopen discovery

and relitigate this case. Her attorney did not move to amend the Rule 16 scheduling order before

discovery closed, and there is no good cause since he was Plaintiff's attorney through 2023 and

did not avail of the discovery schedule to conduct any discovery whatsoever.

      The Court reviewed the record and properly granted summary judgment. Setting aside the

judgment would indeed be a "fruitless" gesture because Plaintiff cannot prevail on her claims

against the County Defendants.

      For these reasons, the Court should deny Plaintiff's Rule 60 motion to set aside the

judgment. Defendants should not have to bear the costs of her own attorney's misconduct. Just as

water flows down with gravity, fault is properly imputed on the wrongdoer, and parties who play

by the rules should not have to bear the cost.

                          Respectfully submitted,

                      /s/ *Bhairav Radia*

15

**EXHIBIT**

Bhairav Radia, #6293600
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
T: (847) 291-0200
E: bradia@ifmklaw.com

*Attorney for Defendants Jackson County, Sheriff
Robert Burns, Lee Kersten, Bobby Smith, Weylin
Wece, Michael Stratton, Kaitlyn Stearns, Frank
Cano, Kyle Spradling, Nicholas Stearns, Sergio
Rafael, Greg Rowald, Garrett Etherton and Blake
Bachmann*

**EXHIBIT**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ALICE WIDDOWS, as Administrator of )
the ESTATE OF KEVIN F. WIDDOWS, )
                                   )
          Plaintiffs,              )
                                   )        Case No.  22-CV-200-NJR
     v.                            )
                                   )
JACKSON COUNTY, et al.,            )
                                   )
          Defendants.              )

## CERTIFICATE OF SERVICE

I certify that on April 15, 2025 I caused the foregoing, **_County Defendants' response to Plaintiff's Rule 60 motion_** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all registered ECM/ECF participants.


By:    _s/Bhairav Radia_____
       Bhairav Radia, #6293600

