IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALICE WIDDOWS, as Administrator of the Estate of KEVIN F. WIDDOWS,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON COUNTY, SHERIFF ROBERT BURNS, LEE KERSTEN, BOBBY SMITH, WEYLIN WECE, MICHAEL STRATTON, KAITLYN STEARNS, FRANK CANO, KYLE SPRADLING, NICHOLAS STEARNS, SERGIO RAFAEL, GREG ROWALD, GARRETT ETHERTON, CONNIE FALKENBURY, and BLAKE BACHMANN,<br><br>Defendants. | Case No. 3:22-CV-00200-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case is about a mother whose son's life was tragically cut short and her attorney who seemingly abdicated his professional duty to represent her. After the Court entered judgment in favor of Defendants, Plaintiff Alice Widdows ("Ms. Widdows") filed a *pro se* motion to reopen the case (Doc. 70) and an amended motion to set aside the Court's judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. 78). These motions are now before the Court.

BACKGROUND

On February 2, 2021, Kevin Widdows ("Kevin") took his own life while he was

detained at the Jackson County Jail ("Jail"). (Doc. 15 at ¶ 6). The Court presumes the parties' familiarity with the facts of this case and will thus recite them only as necessary to address Ms. Widdows' post-judgment motions. For a more exhaustive discussion of the facts, the Court refers the reader to its Order granting Defendants' motions for summary judgment entered on August 2, 2024. (Doc. 68).

Ms. Widdows, Kevin's mother and administrator of his estate, hired Attorney William Ballard in January 2022 to represent her in connection with this lawsuit and Kevin's probate case in Jackson County. (Doc. 80-1 ¶ 6). On February 1, 2022, Ms. Widdows filed a complaint in this Court naming as Defendants Nurse Connie Falkenbury ("Falkenbury"), Jackson County, Illinois, Sheriff Robert Burns in his official capacity, Lee Kersten, Bobby Smith, Weylin Wece, Michael Stratton, Kaitlyn Stearns, Frank Cano, Kyle Spradling, Nicholas Stearns, Sergio Rafael, Greg Rowald, Garrett Etherton, and Blake Bachmann (collectively the "County Defendants").[1] (Doc. 1). She filed an amended complaint on April 28, 2022, asserting five claims for relief: (1) Failure to Protect under the Fourteenth Amendment against the Individual Defendants (Count I); (2) a *Monell* Claim against Sherriff Burns and Jackson County (Count II); (3) Wrongful Death under Illinois law against the Individual Defendants and Sheriff Burns (Count III); (4) *Respondeat Superior* under Illinois law against Sheriff Burns (Count IV); and (5) Indemnification under Illinois law against Jackson County (Count V).

---

[1] Jackson County and Sheriff Robert Burns in his official capacity are institutional defendants. *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 982 (7th Cir. 2013); *Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998). Thus, where appropriate, the Court will refer to the remaining Defendants who are sued in their individual capacities, namely, Falkenbury, Kersten, Smith, Wece, Stratton, Kaitlyn Stearns, Cano, Spradling, Nicholas Stearns, Rafael, Rowald, Etherton and Bachmann as the "Individual Defendants."

(Doc. 15 at ¶¶ 31-60).

On December 1, 2022, the Court adopted the parties' joint report and proposed scheduling order, setting several deadlines to advance the case toward resolution. (Doc. 32-1). Attorney Ballard allegedly "did not conduct any oral or written discovery in the case, did not make initial or expert disclosures, and has not communicated with counsel for Defendants since approximately January 2023." (Doc. 80 ¶ 4). The Court's scheduling order set a deadline of October 2, 2023, for the submission of dispositive motions. (Doc. 32-1). Falkenbury filed her motion for summary judgment on October 2, 2023 (Doc. 52). The County Defendants filed their consolidated motion for summary judgment on October 6, 2023 (Doc. 53), after the Court granted their motion to file it *instanter*. (Doc. 56).

Under Local Rule 7.1(b)(1)(A), Ms. Widdows' response brief to Falkenbury's motion for summary judgment was due on or before November 2, 2023, whereas her response to the County Defendants' motion was due on or before November 6, 2023. Months went by with no responsive filing from Ms. Widdows. On April 4, 2024, the Court issued an order directing Attorney Ballard to show cause, by April 12, 2024, as to why it "should not (i) construe his failure to timely respond to the pending motions for summary judgment as an admission of the merits of the motions and (ii) grant summary judgment for Defendants." (Doc. 67). The Court even invited Attorney Ballard to submit responsive summary judgment briefs by April 12 *in lieu of* responding to the show cause order because it would have permitted an informed review of Defendants' motions on the merits. (*Id.*). Finally, Attorney Ballard was "WARNED that the failure to file either a

Page 3 of 17

response to this Order to Show Cause or a response to the pending motions for summary judgment may result in the dismissal of Defendants for lack of prosecution pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent authority to manage its docket." (*Id.*).

The Court's prodding fell on deaf ears. Neither Attorney Ballard, nor Ms. Widdows, communicated with the Court in connection with the April 4 show cause order (or at all). On August 2, 2024, the Court granted summary judgment in favor of Defendants, basing its decision not on Plaintiff's failure to prosecute, but, as best it could, on the merits of the case. (Doc. 68). That same day, the Court entered judgment in favor of Defendants and dismissed the case with prejudice. (Doc. 69).

On September 25, 2024, Ms. Widdows, in a handwritten letter, which the Court construed as a *pro se* motion to reopen the case, told the Court that, on July 22, 2024, she learned that Attorney Ballard was closing his office and transferring the case to another attorney. (Doc. 70). She also explained that, on September 4, 2024, her son "informed [her] that the case had been dismissed," and that Attorney Ballard "had not been responding to the notices to appear." (*Id.*). Ms. Widdows thus asked the Court to "reopen[] [the] case." The Court ordered Defendants to respond to Ms. Widdows' motion by October 11, 2024, which they did. (Docs. 71-73).

On October 16, 2024, Ms. Widdows personally appeared at a scheduled hearing in Kevin's probate case, where she learned that Attorney Ballard did not have a license to practice law in Illinois "at any time in 2024." (Doc. 80-1 ¶ 12). Indeed, according to the Illinois Attorney Registration and Disciplinary Commission's records, Attorney Ballard

was last registered to practice in 2023. (Doc. 80-2).

On December 2, 2024, Ms. Widdows filed a motion for leave to file an amended motion for post-judgment relief under Rule 60(b) and sought 60 days to obtain new counsel. (Doc. 74). Through this filing, the Court learned, for the first time, that Attorney Ballard had lost his license to practice and may have engaged in the unlicensed practice of law "for the entirety of the year 2024." (*Id.*). Ms. Widdows also accused Attorney Ballard of "fail[ing] to litigate this case on the most basic level," and told the Court that his conduct had "caused tremendous stress to [her] and [her] family." (*Id.*). The Court granted Ms. Widdows additional time to obtain new counsel and ordered replacement counsel to file an amended motion for post-judgment relief on or before January 30, 2025. (Doc. 75). The Court also explained that Ms. Widdows' request to reopen the case placed it in a difficult position because while it was "concerned about the troubling allegations that [she] . . . brought against her lawyer," it was "also cognizant of Defendants' desire for finality in this case." (*Id.*).

On March 3, 2025, after obtaining another brief extension from the Court, and represented by new counsel, Ms. Widdows filed her memorandum of law (Doc. 80) in support of her amended motion to set aside the Court's judgment (Doc. 78). Defendants filed responsive briefs on April 14 (Doc. 86, Falkenbury's response) and April 16 (Doc. 90, the County Defendants' response). Ms. Widdows' motions for post-judgment relief are thus ripe for disposition.[2]

---

[2] Although Ms. Widdows has filed two motions for post-judgment relief, a *pro se* motion to "reopen" the case (Doc. 70), and an amended motion to vacate judgment under Rule 60 (Doc. 78), this Order focuses on

**LEGAL STANDARD**

Collateral attacks on final judgments in civil cases are governed by Federal Rule of Civil Procedure 60(b). *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000). "Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances." *Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001) (quoting *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir. 1995)). Courts, in their discretion, may grant relief from final judgments under Rule 60(b) for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief."

FED R. CIV. P. 60(b). A Rule 60(b) motion "must be shaped to the specific grounds for modification or reversal found in 60(b)," *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992), and may not be used "to correct mere legal blunders." *Cash v. Ill. Div. of Mental Health*, 209 F.3d 695, 697 (7th Cir. 2000). Thus, if a party's claims "fall outside the class of

---

her amended motion because the *pro se* motion did not develop a legal argument in support of her request to reopen the case. This Order thus resolves both motions.

mistakes Rule 60(b) exists to correct, they fail." *Id.* at 698; *Talano*, 273 F.3d at 762.

Rule 60(d)(3) provides that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3). The phrase "fraud on the court," is not defined in Rule 60, but the Seventh Circuit has held that it must be "defined narrowly." *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011). To that end, "fraud on the court" has been characterized as:

> [T]he kind of fraud that ordinarily couldn't be discovered, despite diligent inquiry, within a year, and in some cases within many years—cases in which there are no grounds for suspicion and the fraud comes to light serendipitously. Examples are bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured.

*Id.* Fraud on the court, moreover, "is actionable only if it prejudices the adverse party." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010). And even then, the party invoking it under Rule 60, "must prove fraud by clear and convincing evidence." *Id.*

## DISCUSSION

Ms. Widdows' principal arguments for relief invoke Rules 60(d)(3) and (b)(4). Her theory under Rule 60(d)(3) is that Attorney Ballard committed a fraud on the court when he failed to notify it that his license to practice law had lapsed. As to Rule 60(b)(4), Ms. Widdows contends that the Court's judgment is void because she did not have notice of Defendants' pending motions for summary judgment and was thus deprived of due process and an opportunity to be heard. Ms. Widdows also claims that, on the merits, she has meritorious claims against Defendants that should have survived summary judgment. The Court will address each of these arguments in turn.

1. <u>Fraud on the Court under Rule 60(d)(3)</u>

Ms. Widdows' first argument seeks relief from judgment on the basis that Attorney Ballard committed a fraud on the court. Her theory is that Attorney Ballard deceived the Court by failing to withdraw as counsel when his license lapsed in January 2024.[3] This failure, she argues, caused the Court to issue the April 4 show cause order *to Attorney Ballard* because it was unaware that, by then, he was no longer licensed to practice and could not have been acting as her counsel. The result, in her view, was a subversion of the judicial process because she did not have notice of the show cause order or the need to respond to Defendants' motions for summary judgment.

Unfortunately for Ms. Widdows, her theory does not meet the requirements of Rule 60(d)(3). First, it appears Attorney Ballard maintained his license until the end of 2023. This means that he was (or at least should have been) acting as Ms. Widdows' counsel when Defendants filed their motions for summary judgment. Indeed, Ms. Widdows' responses to the summary judgment motions were due in November 2023, before Attorney Ballard lost his license. Attorney Ballard unquestionably harmed his client's case by failing to respond to them (more on that later). But it is less clear—and certainly not established by "clear and convincing evidence"—that Attorney Ballard's conduct rendered "the judicial machinery [unable to] perform in the usual manner its impartial task of adjudging cases." *In re Golf*, 652 F.3d at 809 (quotation marks omitted). The Seventh Circuit's examples of fraud on the court, including "bribery of a judge or

---

[3] The record does not disclose the exact date on which Attorney Ballard's license to practice law lapsed. Ms. Widdows has taken the position that she was "unrepresented as of January 1, 2024." (Doc. 80, p. 7).

exertion of other undue influence on him, jury tampering, and fraudulent submissions," are not present here. *Id.* And while these "examples" do not exhaustively demonstrate what may be considered fraud on the court, this Court is unable to conclude that Attorney Ballard's disappearance from the case reflects a comparable level of culpability. *See Oxxford Clothes XX, Inc. v. Expeditors Intern. of Washington. Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) (fraud on the court refers to "egregious . . . conduct that might be thought to corrupt the judicial process itself, as where a party bribes a judge or inserts bogus documents into the record.").

Ms. Widdows principally relies on two cases, which, she claims, lend some support to her position. First, she cites the Middle District of Pennsylvania's decision in *Adv. Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 374-75 (M.D. Pa. 2019), for the proposition that "acts of fraud upon the court by a party's own attorney can support vacatur of a judgment." (Doc. 80, p. 6). But *Huber* cuts against her position. In that case, certain defendants alleged that their lawyer had committed a fraud on the court by failing to disclose his full professional disciplinary history. *Id.* at 374. The court recognized that the attorney's "alleged lack of candor" could form the basis of a professional misconduct complaint. *Id.* at 375. But it was careful to differentiate such misconduct from "intentional fraud" because the attorney held a good faith belief that any past disciplinary matters were resolved and that he was not precluded from representing his clients in the case. *Id.* *Huber* is consistent with *In re Golf* in recognizing that absent an "intentional fraud" or egregious conduct that subverts the judicial process, an attorney's lack of candor is professional misconduct, not fraud on the court.

Ms. Widdows also cites *Wildcat Enters., LLC v. Weber*, 322 F.R.D. 306 (N.D. Ill. 2017), to support her fraud on the court theory. In *Weber*, a group of judgment debtors created a shell company (Wildcat) to protect their assets from creditors. *Id.* at 307. The court, without knowledge of Wildcat's purpose, entered a "turnover order" allowing the judgment debtors to transfer certain assets to Wildcat. *Id.* Two creditors eventually filed a Rule 60 motion, seeking to vacate the turnover order due to fraud on the court. *Id.* The court was blindsided and stated that "had [it] been aware of the circumstances recounted above, [it] most certainly would not have approved the Turnover Order." *Id.* at 310. The judgment debtors had used the judicial process itself to fend off legitimate claims from creditors and concealed this purpose from the court, thus warranting the conclusion that the court had been defrauded. *Id.* at 311. *Weber* is of little help to Ms. Widdows because Attorney Ballard's disappearance from the case, while perhaps unethical and unprofessional, does not amount to a similar subversion of the judicial process.

The judicial process worked as it would in any other situation when a party fails to respond to a motion for summary judgment. In the Seventh Circuit, "a failure to file a timely response to . . . a motion [for summary judgment] is not a basis for automatically granting summary judgment as some kind of sanction." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment was proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant." *Id.* (internal quotation marks and citation omitted). The Court honored this requirement and faithfully applied the Rule 56 standard to determine whether any

of Ms. Widdows' claims survived summary judgment. It determined that none did and consequently entered judgment in favor of Defendants. The fact that the non-moving party's attorney abandoned the case does not rise to the level of "egregious" misconduct that constitutes a fraud on the court. *See Wickens*, 620 F.3d at 759 (failure to disclose litigation funding arrangement did not constitute fraud on the court).

Ms. Widdows' theory that Attorney Ballard committed a fraud on the court, moreover, cannot satisfy the requirement that the fraud "prejudices the adverse party." *Wickens*, 620 F.3d at 759. The Court, in its August 2 order granting Defendants' motions for summary judgment, repeatedly emphasized the failure to defend Ms. Widdows' claims. *See* (Doc. 68, pp. 17, 22) (criticizing failure to proffer "any evidence in support of [Ms. Widdows'] wrongful death claim;" noting that "failure to present a coherent theory of liability supported by record evidence makes it difficult to evaluate the nature of [Ms. Widdows'] claim and the applicability of the asserted immunity defenses."). Thus, the only person prejudiced by Attorney Ballard's desertion of his client was . . . his client. So, while the Court is unquestionably troubled by Attorney Ballard's loss of his license to practice, his abdication of responsibility in this case, and the harm that befell his client as a result, there is no way to view these developments as having prejudiced Defendants.

For these reasons, the Court is unable to grant Ms. Widdows relief from judgment under Rule 60(d)(3).

2. <u>Void Judgment under Rule 60(b)(4)</u>

Ms. Widdows' second argument contends that the Court's judgment should be vacated under Rule 60(b)(4), which applies if "the judgment is void." Voidness, she

claims, is established here because Defendants moved for summary judgment and the Court issued the April 4 show cause order without notice to her. This, in turn, deprived her of her right to due process, which the Supreme Court has recognized as a basis for relief under Rule 60(b)(4). *See United Student Aid Funds v. Espinosa*, 559 U.S. 260, 271 (2010) (Rule 60(b)(4) "applies only in the rare instance where a judgment is premised . . . on a violation of due process that deprives a party of notice or the opportunity to be heard.").

There are at least two problems with this argument. First, as noted, Attorney Ballard did not lose his license to practice until January 2024. Thus, he was licensed and representing Ms. Widdows as her counsel when Defendants' motions for summary judgment were filed and even when her responses were due. Logically, then, Attorney Ballard was not precluded from acting as Ms. Widdows' attorney when it was time to respond to Defendants' summary judgment motions. Indeed, Attorney Ballard's email was registered in the CM-ECF system so that he would have received notice of Defendants' summary motions. The fact that he stood idly by as the clock ticked on Ms. Widdows' response time, and apparently did not communicate with her about the need to respond, does not mean that notice was deficient. *Johnson v. Purdue*, 126 F.4th 562, 566 (7th Cir. 2025); *Ajose v. Gonzalez*, 408 F.3d 393, 395 (7th Cir. 2005).

An attorney's actions (and inactions) are attributed to the client. *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003). It is up to the *client* to "vigilantly oversee" counsel's performance "and, if necessary, take matters into their own hands." *Id.* (quotation marks omitted); *cf. Baker Mach. & Fabr., Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("A lawyer who inexcusably neglects his client's obligations does not present

exceptional circumstances" warranting relief under Rule 60(b)). Attorney Ballard apparently disregarded the email notices he received concerning Defendants' dispositive motions and the show cause order. This notice and his failure to act on it are imputed to Ms. Widdows. *Ajose*, 408 F.3d at 395.

Moreover, Ms. Widdows does not deny that she had the ability to take matters into her own hands and find out what was happening in the case. On July 22, 2024, eleven days before the Court granted summary judgment in Defendants' favor, she learned that Attorney Ballard was closing his office. Then, on September 4, 2024, her son, through an internet search, found out that the case had been dismissed, and that Attorney Ballard had not responded to the Court's "notices to appear" (the Court presumes that she is referring to the April 4 show cause order). Court dockets are public records, and Ms. Widdows acknowledges that she had the means to learn about the status of her case, as she did when her son looked it up online. (Doc. 80 ¶ 12).

This presents another problem for Ms. Widdows' voidness argument under Rule 60(b)(4). It is well established that *actual* notice of an adverse summary judgment motion is not required to satisfy due process. *Johnson*, 126 F.4th at 566. "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). *Constructive* notice thus satisfies due process concerns. *Id.* Here, the record establishes, convincingly, that Ms. Widdows had constructive notice because she or someone in her family could look up the docket at any time to see what was happening in the case. Indeed, that is

exactly what happened here. *See id.* at 566-67 (no due process violation where plaintiff did not have actual notice of adverse summary judgment motions but had constructive notice because he had received court's order directing defendants to refile them).

For these reasons, Ms. Widdows' lack of actual notice concerning Defendants' summary judgment motions and the April 4 show cause order did not render the judgment void.[4]

3. <u>Meritorious Claims</u>

The Court now turns its attention to Ms. Widdows' final argument concerning the merits of her underlying claims. The critical issue in this case was whether Defendants were on notice of Kevin's suicide risk before he took his own life. If the evidence suggested that they were, Ms. Widdows' claims perhaps could have survived summary judgment. She thus points to hospital records, created on the day Kevin arrived at the Jail and two days before he passed, that strongly suggest his suicide risk. One provider noted that Kevin had had "hallucinations and suicidal thoughts;" another record reveals that Kevin harbored "suicidal ideas," and that his "[t]hought content includes homicidal and suicidal ideation," along with a "suicidal plan." (Doc. 54-1, pp. 27, 38, 39). Ms. Widdows

---

[4] Ms. Widdows also contends that her lack of notice violated Local Rule 56.1(j), which states that "[m]otions for summary judgment served on *pro se* parties must be accompanied by a certification that notice of the consequences for failing to respond to a motion for summary judgment has been served on the *pro se* party as required by *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982)." This argument is unconvincing because Ms. Widdows was not a *pro se* litigant when Defendants filed their motions for summary judgment in October 2023. As explained, Attorney Ballard was still licensed to practice at the time. *Timms* held that "all *pro se* litigants . . . are entitled to notice of the consequences of failing to respond to a summary judgment motion." *Timms*, 953 F.2d at 284. Ms. Widdows attempts to shift the focus to the Court's April 4 show cause order to argue that *at that time*, she was unrepresented and entitled to notice under *Timms*. But *Timms* and Local Rule 56(j) focus on the time of service of the *motion*, not on subsequent developments related to it. Thus, the Court is forced to reject this argument as well.

further claims that these records accompanied Kevin to the Jail and that Defendants would have had access to them.

Although district courts are not required to "scour the record in search of a genuine issue of triable fact," *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995), the Court is disheartened to learn that these documents were buried in the summary judgment record. Indeed, with minimally competent advocacy and a good faith attempt to present this evidence within the legal framework of Ms. Widdows' claims, the disposition of Defendants' summary judgment motions may have been different. The question remains, however, where this leaves Ms. Widdows' motion for relief from a final judgment.

Unfortunately for Ms. Widdows, her argument does not fit within the scope of Rule 60(b) because it is one that, under normal circumstances, could have been raised in an appeal. "The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain reversal by means of a direct appeal." *Bell*, 214 F.3d at 801. The Seventh Circuit has consistently enforced this rule, regardless of the nature of the claimed error. *See Easley v. Kirmsee*, 382 F.3d 693, 698-700 (7th Cir. 2004); *Talano*, 273 F.3d at 762; *Bell*, 214 F.3d at 801; *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1434 (7th Cir. 1996); *Hoeft v. Straub*, 497 F. App'x 615, 618 (7th Cir. Nov. 30, 2012); *cf. Cash*, 209 F.3d at 698 (Rule 60(b) not intended to correct legal errors). Ms. Widdows' argument that the evidence establishes a disputed issue of material fact under Rule 56 falls into the category of appellate arguments that may not be raised in a later Rule 60(b) motion.

*Easley* is both instructive and binding here. In that case, after a plaintiff's attorney failed to file a response to the defendants' motions for summary judgment, the district court entered judgment in the defendants' favor. *Easley*, 382 F.3d at 696. The district court then denied the plaintiff's motion for relief from judgment under Rule 60(b). *Id.* The Seventh Circuit affirmed the denial of the Rule 60(b) motion while recognizing the possibility that the plaintiff may have lost her opportunity to present "meritorious" claims. *Id.* at 699. This, the court found, was a "regrettable" result, but it could not displace the principle that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at 699-700 (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 296 (1993) (alterations omitted)). Accordingly, the Court finds its hands tied here, notwithstanding competent evidence that very well may have persuaded it to deny summary judgment if it had been presented in a timely fashion.

In the end, Ms. Widdows appears to be the victim of her attorney's unprofessional conduct. It is deeply unfortunate that her grief over her son's death was compounded by a lawyer who abdicated his professional duty to her. But in these circumstances, liability necessarily shifts from the originally named Defendants to the attorney. *See Baker Mach.*, 570 F.3d at 848 ("Deception of a client becomes the liability of the client's attorney and not the client's opponent."); *Longs v. City of S. Bend*, 201 F. App'x 361, 364 (7th Cir. Oct. 4, 2006) (where counsel fails to file response to motion for summary judgment, "[t]he proper remedy is a malpractice action against the attorney.").

## Conclusion

For these reasons, Ms. Widdows' *pro se* motion to re-open the case (Doc. 70) and

her amended motion to set aside the Court's judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. 78) are **DENIED**.

    **IT IS SO ORDERED.**

    DATED:  September 15, 2025

                                            **NANCY J. ROSENSTENGEL**
                                            **Chief U.S. District Judge**